Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Apr 30 2014, 10:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD R. SHULER**
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| YOSEF M. HAJAJI,<br><br> Appellant-Defendant,<br><br>  vs.<br><br>STATE OF INDIANA,<br><br> Appellee-Plaintiff. | )<br>)<br>)<br>)<br>)  No. 43A03-1310-CR-407<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE KOSCIUSKO SUPERIOR COURT
The Honorable Joe V. Sutton, Judge
Cause No. 43D03-1212-FD-782

**April 30, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**SULLIVAN, Senior Judge**

Yosef M. Hajaji was convicted of Class D felony domestic battery and sentenced to three years, with one year executed and two years suspended to probation. He now contends his sentence is inappropriate. We disagree and affirm his sentence.

## FACTS AND PROCEDURAL HISTORY

On December 5, 2012, Hajaji was in the living room of his Kosciusko County home with his then-wife L.A., their six-year-old son D.H., and L.A.'s eleven-year-old son A.A. L.A. was helping D.H. with his spelling homework. Hajaji attempted to initiate sexual relations with L.A., but she rejected his advances. Hajaji became angry, grabbed L.A., dragged her across the floor, and tried to push her down the stairs. He then dragged L.A. by her ankles into the bedroom. The bedroom was next to the living room, and the boys could still hear the attack and see part of what occurred. They heard Hajaji slamming L.A. around the bedroom. Both boys were scared, and D.H. reported that he thought their mother would die. The boys saw Hajaji rip off L.A.'s clothes, including her bra and underwear. Hajaji then tried to push L.A. out the back door of the home. At some point during the attack, the boys managed to get their mother some clothing, and she then ran across the street for help.

The State charged Hajaji with Class D felony domestic battery with a child under sixteen present, Class A misdemeanor domestic battery, and Class D felony intimidation. Hajaji pleaded guilty to Class D felony domestic battery. Although there was no written plea agreement, there appears to have been an oral agreement in which the State agreed to dismiss the remaining counts in exchange for his plea. See Tr. pp. 3, 122.

At Hajaji's sentencing hearing, the State read into the record a statement from L.A. about the impact of the crime on her, A.A., and D.H.; presented evidence of a Department of Child Services investigation into allegations of child abuse and neglect stemming from the crime; and asked the trial court to take judicial notice of L.A.'s restitution affidavit. Hajaji called L.A. to the witness stand to examine her regarding her restitution request.

The trial court found as mitigators Hajaji's guilty plea, lack of criminal history, and that incarceration would be a hardship to his dependents. As aggravators, the court identified his lack of remorse and that a suspended sentence would diminish the seriousness of the crime. The court noted that balancing the factors was close but ultimately decided the mitigators outweighed the aggravators. It sentenced Hajaji to three years in the Kosciusko County Jail, with one year executed and two years suspended to probation, adding: "And if you lose your job[,] you lose your job. That's the consequence of your choice to drag your wife through the house, strip her naked, throw her around against the walls, off the bed, drag her back up [in] front of your children and yell at her, I mean six (6) months in jail seems like a drop in the bucket." Id. at 117. Hajaji was also ordered to pay restitution and to have no contact with L.A. for the period of his sentence. Hajaji now appeals.

## DISCUSSION AND DECISION

Hajaji challenges his sentence. He does not argue the trial court abused its discretion in its finding of mitigators and aggravators. Instead, he claims his sentence is inappropriate and asks us to independently review and revise it.

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Reid v. State, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (2007)). The defendant has the burden of persuading us that his sentence is inappropriate. Id.

We first look to the statutory range established for the class of the offense. Hajaji was convicted of a Class D felony. The statutory range for a Class D felony is between six months and three years, with the advisory sentence being one and a half years. Ind. Code § 35-50-2-7(a) (2012). Hajaji was sentenced to three years in the Kosciusko County Jail, with one year executed and two years suspended to probation.

We next look to the nature of the offense and Hajaji's character. Hajaji characterizes the nature of the offense as "mundane." Appellant's Br. p. 6. We disagree. Hajaji beat up his wife because she rejected his sexual advances. He grabbed her, tried to shove her down the stairs, dragged her by the ankles into the bedroom, slammed her body against walls and furniture, ripped her clothes off, and tried to push her out of the house. Eleven-year-old A.A. and six-year-old D.H. saw and heard the attack. The boys were scared, and D.H. thought their mother was going to die. The incident was particularly humiliating as L.A.'s young boys saw her naked and treated as nothing more than a piece

4

of property. The nature of the offense was far from mundane and alone justifies the sentence imposed by the trial court.

As to Hajaji's character, we acknowledge that the presentence investigation report reveals no prior criminal history. Nevertheless, his poor character is shown by his sheer lack of remorse and inability to fully accept responsibility for his behavior. As noted in the presentence investigation report, Hajaji's version of the offense, in its entirety, was: "My wife and I were arguing. I did not want the children to hear, so I grabbed her arm to take her somewhere where the children would not hear us argue." Appellant's App. p. 98. Quite apart from this purported benevolent intention to protect the children, the evidence at the sentencing hearing showed he brutalized his wife in their presence, exposing them to a volatile domestic situation.

His poor character is also brought into question by his apparent violation of a protective order issued after the battery occurred. Specifically, Hajaji was charged with Class A misdemeanor invasion of privacy for giving L.A. a video during a parenting time exchange in violation of the protective order.[1] In the police report, it was alleged that Hajaji and D.H. were sitting in a truck in a garage for the full twenty-nine minute video, that D.H. appeared uncomfortable, that Hajaji said he knew he could get in trouble for communicating with L.A. but that he did not care, and that he also said he would do "anything" to keep the family together. Id. at 75. The police report reflects that the reporting officer viewed the video and did not rely solely on L.A.'s allegations. Hajaji's

---

[1] The invasion of privacy charge was pending at the time of sentencing in this case.

5

seeming violation of the protective order shows disrespect for the authority of the court. That he would do it while this case was pending shows disdain for the rule of law.

Hajaji nonetheless argues that the fact that he pleaded guilty without a written plea agreement reflects favorably on his character. The record, however, reveals an apparent oral agreement in which the State agreed to dismiss the remaining counts in exchange for his plea. See Tr. pp. 3, 122. Moreover, even if there were no oral agreement, we view his decision to plead guilty as largely pragmatic—the evidence against him would have included not only L.A.'s testimony, but the testimony of A.A. and D.H. as well. See Wells v. State, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005) ("[A] guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against him is such that the decision to plead guilty is merely a pragmatic one."), trans. denied. We acknowledge his guilty plea saved L.A., A.A., and D.H. from the anxiety of having to testify against him at trial. Still, given his lack of remorse, his decision to plead guilty appears to have been driven by hopes of escaping more severe punishment and does not reflect full acceptance of responsibility for his reprehensible actions.

In short, Hajaji has failed to persuade us that his sentence of one year executed and two years suspended to probation is inappropriate.

<u>CONCLUSION</u>

We therefore affirm his sentence.

NAJAM, J., and KIRSCH, J., concur.